United States District Court
Southern District of Texas

**ENTERED**

February 26, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-18-1098 |
| THE LIFEPAY GROUP, LLC, et al., | § § § | |
| Defendants. | § § | |

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Doc. 50), Defendant Michael E. Watts's ("Watts") Motion for Summary Judgment (Doc. 63), Watts's Motion to Strike (Doc. 86), and Watts's Objection to Admissibility of Watts's Deposition (Doc. 87). The court has considered the motions, the responses, the replies, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and that Watts's Motion for Summary Judgment be **DENIED**. Also, Watts's Motion to Strike is **DENIED** and Watts's Objection to the Admissibility of Watt's Deposition is **OVERRULED**.

## I.  Case Background

Plaintiff filed this lawsuit against Defendants alleging

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. <u>See</u> Doc. 62, Ord. Dated June 13, 2019.

violations of multiple securities regulations.

## A. __Factual Background__[2]

Watts is a sixty-three year-old securities professional with experience serving as a registered representative for several broker-dealers from 1988 to 1999.[3]  In 2012, Watts formed SMDRE, LLC ("SMDRE"), an entity that purportedly invested in oil and gas assets.[4]  On January 13, 2013, Watts transferred 51% of ownership in SMDRE to Defendant Clifton E. Stanley ("Stanley").[5]  Throughout the relevant time period Watts had control of SMDRE's bank accounts, paid SMDRE's bills, signed checks for SMDRE, and authorized wire transfers on behalf of SMDRE.[6]

Watts also owned Lifestream, LLC ("Lifestream"), and Geoserve Marketing, LLC ("Geoserve").[7]  Watts used Lifestream to invest in oil and gas properties.[8]  Geoserve marketed and promoted securities for Hyperdynamics Corp. and Hydrocarb Energy Corp. ("Hydrocarb").[9]

---

[2]     Plaintiff provided its evidence in the form of an appendix that spans numerous docket entries.  The court will cite the appendix by citing the applicable docket entry number followed by the Appendix page number(s), a description of the document, and a pincite for deposition testimony.

[3]     See Doc. 65, APP 035, Hahn Decl.

[4]     See id. APP 37.

[5]     See Doc. 77, APP 426, SMDRE Resolution.

[6]     See Doc. 76, APP 401-02, Watts Dep. Tr. pp. 54:6-55:1, 57:10-24; Doc. 65, APP 037, Hahn Decl.

[7]     See Doc. 76, APP 389-390, Watts Dep. Tr. pp. 12:2-13:10, 15:6-12.

[8]     See id.

[9]     See id.

Watts's brother was the CEO of Hydrocarb and Hyperdynamics Corp.[10]

### 1.   SMDRE Note Offering

From February 2015 to November 2016, SMDRE raised investment capital by issuing promissory notes to individual investors.[11]  The investors were told that their money was to be invested in safe and profitable oil and gas properties and would generate returns based on the price of oil.[12]  The promissory notes included a loan agreement and a chart that projected investment returns based on oil prices (collectively the "Offering Documents").[13]  Stanley and Watts met with potential investors and discussed the anticipated return on investment.[14]

Watts's level of involvement at these meetings is disputed. Watts represented that he was rarely present for the meetings and, when he was present, Watts characterized his involvement as being limited to only explaining how the investor's money would be employed to bolster SMDRE's oil and gas investments.[15]  Watts averred that Stanley alone convinced investors to purchase the

---

[10]     See id.

[11]     See e.g., Doc. 64-1, APP 007-15, Schmalz Note; APP 021-031, Smith Note; Doc. 65, APP 037 Hahn Decl.

[12]     See e.g., Doc. 64-1, APP 001-006, Schmalz Decl.

[13]     See Doc. 65, APP 039 Hahn Decl.; Doc. 64-1, APP 007-015, Schmalz Note; APP 021-031.

[14]     See Doc. 76, APP 411, Watts Dep. Tr. pp. 97-100; Doc. 64-1, APP 001-006, Schmalz Decl., Doc. 64-1, APP 16-20, Smith Decl.

[15]     See id. APP 399 at 51.

promissory notes.[16]   However, some investors have testified that Watts was directly involved in the sales aspect of the meetings through various acts and representations including: (1) personally guaranteeing an investment; (2) representing his net worth to be substantial; (3) signing the promissory notes; (4) preparing the promissory notes and loan agreements; (5) asking potential investors about their interest in investing in oil and gas properties; (6) stating that an investor's principal would not be at risk; and (7) other acts that would entice someone to purchase an SMDRE promissory note.[17]

In total, SMDRE raised no less than $1,389,575 from approximately ten investors located in Texas and Louisiana.[18]   SMDRE issued at least twenty-two promissory notes to investors with face values of over $3.1 million.[19]   A registration statement was never filed with the Securities and Exchange Commission ("SEC") for any of the SMDRE promissory notes.[20]

## 2. **Stanley's Commission**

For almost every investment made in an SMDRE promissory note,

---

[16]    See Doc. 76, APP 411, Watts Dep. Tr. pp. 97-100.

[17]    See Doc. 64-1, APP 003, Schmalz Decl.; Doc. 64-1, APP 011, Schmalz Note; Doc. 64-1, APP 017-018, Smith Decl.

[18]    See Doc. 65, APP 037, Hahn Decl.

[19]    See id.

[20]    See Doc. 64-1, APP 032, Countryman Decl.

Stanley was paid an eight to fifteen percent commission.[21]  Stanley received over $140,000 of SMDRE investor monies from these commissions.[22]  Stanley's commissions were not disclosed in the Offering Documents, and potential investors were not informed that Stanley would earn a commission at the pre-investment meetings.[23]

### 3.  SMDRE Oil & Gas Investments

Once an investor's money was deposited into SMDRE's bank account, the money was immediately transferred to Lifestream, a company owned by Watts, for the purchase of oil and gas interests.[24] In 2015, using the proceeds of the promissory notes, SMDRE purchased working interests in four oil and gas properties (the "Interests") from Lifestream for a total of $1,276,500.[25] Watts did not tell SMDRE note investors that their money would be used to purchase oil and gas interests from a company he owned.[26]  Likewise, this information was not disclosed in the Offering Documents.[27]

---

[21]  See Doc. 76, APP 404, 409-410, Watts Dep. Tr. pp. 72, 92-95; Doc. 65, APP 038-039, Hahn Decl.

[22]  See Doc. Doc. 65, APP 038-039, Hahn Decl.

[23]  See Docs. 66-70, APP 071-173, The Offering Documents; Doc. 64-1, APP 019, Smith Decl.; Doc. 64-1, APP 005 Schmalz Decl.

[24]  See Doc. 76, APP 408, Watts Dep. Tr. pp. 86-87.

[25]  See Doc. 65, APP 039-040, Hahn Decl.; Doc. 73, APP 256-268, Oil and Gas Assignments.

[26]  See Doc. 64-1, APP 019, Smith Decl.; Doc. 64-1, APP 005 Schmalz Decl.

[27]  See Docs. 66-70, APP 071-173, The Offering Documents.

### 4.   SMDRE's Hydrocarb Investment and Indebtedness

On December 4, 2013, SMDRE purchased 1,859,879 shares of Hydrocarb stock from Hydrocarb at a price of $1 per share.[28]  SMDRE signed a promissory note in favor of Hydrocarb (the "Hydrocarb Note") for the entire purchase price.[29]  On May 8, 2014, Hydrocarb conducted a reverse stock split.[30]  The reverse stock split resulted in SMDRE's owning 619,960 shares of Hydrocarb at a price of $3 per share.[31]  By February 2015, Hydrocarb's stock price had fallen to around $0.90 per share, a decrease of seventy percent.[32]  SMDRE still owed Hydrocarb the full amount due on the promissory note.[33]  Thus, SMDRE's liabilities greatly exceeded its assets.[34]  Investors who purchased SMDRE promissory notes were not informed of SMDRE's liability to Hydrocarb or its otherwise poor financial condition.[35]

In April 2015, Hydrocarb agreed to reduce the amount SMDRE owed on the Hydrocarb Note to $619,898.[36]  SMDRE subsequently paid

---

[28]   See Doc. 73, APP 269, Hydrocarb Stock Purchase.

[29]   See id.

[30]   See Doc. 65, APP 040-041, Hahn Decl.

[31]   See id.

[32]   See id.

[33]   See id.

[34]   See id.

[35]   See Doc. 76, APP 411, Watts Dep. Tr. p. 100; Doc. 64-1, APP 019, Smith Decl.; Doc. 64-1, APP 005 Schmalz Decl.

[36]   See Doc. 65, APP 041, Hahn Decl.

$531,000 on the Hydrocarb Note, bringing the balance owed down to $88,898.[37]   In January 2016, Hydrocarb wrote off the remaining balance due on the Hydrocarb Note as uncollectible.[38]   On April 13, 2016, Hydrocarb declared bankruptcy, and its stock became worthless.[39]

After Hydrocarb had written off the Hydrocarb note, but before it had declared bankruptcy, it sold the Hydrocarb Note to Geoserve, a company owned by Watts.[40]   On June 30, 2016, Watts transferred his remaining 49% interest in SMDRE to Stanley.[41]   However, this transfer only ended Watts's involvement with SMDRE on paper because, following the transfer, Watts continued to exercise control over SMDRE's bank accounts and signed checks on SMDRE's behalf.[42]

On September 1, 2016, SMDRE entered into a settlement agreement with Geoserve on the Hydrocarb Note with the following conditions: (1) SMDRE agreed that it was indebted to Geoserve in the amount of $1,293,179 on the Hydrocarb Note despite owing only $88,898 on the Hydrocarb Note following the April 2015 balance

---

[37]    See id.

[38]    See id.

[39]    In Re Hydrocarb Energy Corp., 4:16-BK-31922 (Bankr. S.D. Texas).

[40]    See Doc. 76, APP 113-115, Watts Dep. Tr. pp. 113-15; Doc. 65, APP 042, Hahn Decl.

[41]    See Doc. 77, APP 430, June 30, 2016 Letter.

[42]    See Doc. 76, APP 400-01, Watts Dep. Tr. pp. 55-59.

reduction and $531,000 payment; (2) SMDRE agreed to transfer the Interests back to Lifestream until the Hydrocarb Note was paid off.[43]   Lifestream eventually sold the Interests to Ryca Energy Partners, LLC, for $723,811.[44]  Watts testified that the money from that sale went into his personal account.[45]

Also on September 1, 2016, SMDRE purchased working interests in more oil and gas properties from Lifestream in exchange for $2,116,821 payable on a note (the "Lifestream Note").[46]  In total, the transactions on September 1, 2016, left SMDRE in debt to Geoserve and Lifestream for over 3.4 million dollars.

### 5.   Specific Investment Examples

Plaintiff provided two examples of investors who purchased SMDRE promissory notes from Watts and Stanley.

#### i.   Schmalz Investment

Julius P. Schmalz, IV ("Schmalz") testified that in February 2015, Watts and Stanley convinced him to purchase a promissory note for $200,000.[47]  In his declaration, Schmalz stated that Watts made the following representations prior to the investment: (1) Schmalz was guaranteed to not lose his principal; (2) Watts personally

---

[43]   See Doc. 74, APP 294-298, Settlement Agreement.

[44]   See Doc. 76, APP 397-398, Watts Dep. Tr. pp. 44-46.

[45]   See id.

[46]   See Doc. 75, APP 378-384, The Lifestream Note and Agreement.

[47]   See Doc. 64-1, APP 011, Schmalz Note.

guaranteed Schmalz's investment; and (3) Watts represented that he owned millions of dollars of stock in an oil and gas company.[48] Schmalz was not informed that: (1) SMDRE owed a significant amount of money to Hydrocarb; (2) Stanley would be paid a commission of 10% ($20,000) on Schmalz's investment; and (3) Schmalz's investment would be used to purchase oil and gas interest from a company Watts owned.[49]  Schmalz's loan agreement warranted that SMDRE would, at all times, hold assets in excess of 125% of Schmalz's promissory note.[50]

### ii.  Smith Investment

Watts and Stanley knew Michael Tucker Smith ("Smith") through a church they attended in Missouri City, Texas.[51]  Watts, Stanley, and Smith all attended weekly prayer sessions at the church, which were followed by breakfast at a local diner.[52]  According to Smith, on one occasion, Watts and Stanley asked Smith if he would be interested in investing in oil and gas properties.[53]  After several conversations with Watts and Stanley about the investment opportunity, Watts prepared a promissory note and loan agreement.[54]

---

[48]    See Doc. 64-1, APP 002-003, Schmalz Decl.

[49]    See Doc. 64-1, APP 005, Schmalz Decl.

[50]    See id.

[51]    See Doc. 64-1, APP 016, Smith Decl.

[52]    See id.

[53]    See id. APP 017.

[54]    See id.

Smith had $497,000 in his 401(k) retirement account, and used all of it to purchase an SMDRE promissory note.[55]  Watts allegedly represented that Smith's principal investment was not at risk.[56]  Smith was not informed that: (1) SMDRE owed a significant amount of money to Hydrocarb; (2) Stanley would receive a commission of 10% ($49,700) on Smith's investment; and (3) Smith's investment would be used to purchase oil and gas interest from a company Watts owned.[57]  Smith's loan agreement warranted that SMDRE would hold assets in excess of 125% of Smith's promissory note.[58]

**B.   Procedural Background**

On April 6, 2018, Plaintiff filed this lawsuit against The Lifepay Group, LLC ("Lifepay"), SMDRE, Stanley, and Watts.[59]  On February 14, 2019, following an agreed motion, the court entered partial judgments as to liability against Lifepay, SMDRE, and Stanley.[60]  On May 29, 2019, Watts filed his pending motion for summary judgment.[61]  On June 14, 2019, Plaintiff filed its pending motion for summary judgment.[62]  On June 19, 2019, Plaintiff filed

---

[55]   See id. APP 018.

[56]   See id. APP 018-019.

[57]   See id.

[58]   See id.

[59]   See Doc. 1, Pl.'s Compl.

[60]   See Docs. 34-36, Partial Judgments.

[61]   See Doc. 50, Watts's Mot. for Summ. J.

[62]   See Doc. 63, Pl.'s Mot. for Summ. J.

a response to Watts's motion for summary judgment.[63]  On July 5, 2019, Watts filed a motion to strike certain evidence attached to Plaintiff's motion for summary judgment.[64]  On the same day, Watts filed an objection to the admissibility of his deposition testimony.[65]

On July 8, 2019, Plaintiff filed responses to Watts's motion to strike and objection.[66]  On July 17, 2019, Watts filed a response to Plaintiff's motion for summary judgment.[67]  On July 22, 2019, Watts filed a reply in support of his motion for summary judgment.[68] On the same day, Plaintiff filed a motion to strike Watts's response to Plaintiff's motion for summary judgment.[69]  On July 24, 2019, Watts filed a response to Plaintiff's motion to strike.[70]  On July 29, 2019, Plaintiff filed a reply in support of its motion to strike.[71]  On January 7, 2020, the court denied Plaintiff's motion to strike and gave it leave to file a reply within fourteen days of

---

[63]    See Doc. 79, Pl.'s Resp. to Watts's Mot. for Summ. J.

[64]    See Doc. 86, Watts's Mot. to Strike.

[65]    See Doc. 87, Watts's Obj. to Admiss. of Dep.

[66]    See Doc. 88, Pl.'s Resp. to Watts's Obj.; Doc. 89, Pl.'s Resp. to Watts's Mot. to Strike.

[67]    See Doc. 91, Watts's Resp. to Pl.'s Mot. for Summ. J.

[68]    See Doc. 92, Watts's Reply in Support of Mot. for Summ. J.

[69]    See Doc. 93, Pl.'s Mot. to Strike.

[70]    See Doc. 94, Watts's Resp. to Pl.'s Mot. to Strike.

[71]    See Doc. 95, Pl.'s Reply in Support of Mot. to Strike.

the order.[72]   On January 21, 2020, Plaintiff filed a reply in support of its motion for summary judgment.[73]

## II.   Watts's Objection and Motion to Strike

Before addressing the parties' motions for summary judgment, the court will first consider Watts's objection and motion to strike.

### A.   Objection to Deposition

Watts objects to the admissibility of his deposition because "he was never notified by the court reporter of availability as required by [Federal Rule of Civil Procedure ("Rule")] 30."[74]   Watts claims that, as a result, his deposition is incomplete, inaccurate, and inadmissible.[75]

Watts was deposed on April 23, 2019.[76]   The transcript of Watts's deposition became available on May 10, 2019.[77]   On May 22, 2019, Watts moved to suppress his deposition.[78]   On June 4, 2019, the court denied Watts's motion to suppress, ordering that Watts had until June 10, 2019, to review the deposition transcript and

---

[72]   See Doc. 96, Ord. Dated Jan. 7, 2020.

[73]   See Doc. 97, Pl.'s Reply in Support of Mot. for Summ. J.

[74]   See Doc. 87, Watts's Obj. to Admiss. of Dep.

[75]   See id.

[76]   See Doc. 53, Ord. Dated June 4, 2019.

[77]   See id.

[78]   See Doc. 45, Watts's Mot. to Suppress.

make any necessary changes.[79]   On June 10, 2019, Watts filed a motion for reconsideration of the court's ruling.[80]   The court held a hearing on Watts's motion for reconsideration on June 27, 2019.[81] At the hearing, the court gave Watts until July 1, 2019, to review his deposition transcript and file a statement detailing any necessary changes.[82]

Watts never filed a statement.   Rather, Watts filed the pending objection.   Watts has been given multiple opportunities to rectify any inaccuracies in his deposition transcript.   Rather than do so, Watts has repeatedly wasted the court's time by summarily claiming that his deposition was inaccurate.   Watts's objection to the admissibility of his deposition is **OVERRULED**.   Additionally, Watts's statement in his declaration that his deposition is inaccurate is **STRICKEN**.[83]

## B.   <u>Motion to Strike</u>

Watts objects to Carol Hahn's ("Hahn") declaration and Schmalz's affidavit, which were attached to Plaintiff's motion for summary judgment.

### 1.   **Hahn Declaration**

---

[79]   <u>See</u> Doc. 53, Ord. Dated June 4, 2019.

[80]   <u>See</u> Doc. 55, Watts's Mot. for Reconsideration.

[81]   <u>See</u> Doc. 84, Ord. Dated June 27, 2019.

[82]   <u>See</u> <u>id.</u>

[83]   <u>See</u> Doc. 91-1, Ex. A to Watts's Resp. to Pl.'s Mot. for Summ. J., Watts's Decl. p. 1.

Defendant Watt objects to Hahn's declaration on the ground that she is an undisclosed expert who failed to comply with the disclosure requirements of Federal Rule of Civil Procedure ("Rule") 26(a)(2)(A).[84]

In the declaration, Hahn stated that she is a staff accountant at the SEC and pursuant to her employment, analyzed the bank account activity of two fraudulent schemes involving Lifepay, SMDRE, Stanley, and Watts.[85] Hahn reported that in June 2000, Watts was fined and suspended from the National Association of Securities Dealers for one year for his failure to honor an arbitration award.[86] Hahn attached copies of that disciplinary action to her declaration.[87] Hahn also disclosed that Watts was a defendant in two other SEC civil fraud actions filed in this district and in the U.S. District Court for the Eastern District of New York, and was indicted for fraud in the Eastern District of New York, providing public record citations to those actions.[88]

Relevant to the summary judgment motion, Hahn reviewed Watts's bank accounts associated with the alleged fraudulent activity.[89] She concluded that from February 2015 through November 2016, Watts

---

[84]   See Doc. 65, APP 033, Decl. of Carol Hahn.

[85]   See id. APP 034.

[86]   See id. APP 035.

[87]   See id.

[88]   See id. APP 035-036.

[89]   See id. APP 037.

14

raised at least $1.3 million dollars from investors in Texas and Louisiana, which was funneled to Lifestream and other entities.[90] Hahn also traced the flow of funds through various entities and bank accounts, concluding that Watts and Stanley took a majority of the funds for themselves.[91]  Hahn's declaration is supported by citations to documents found in the summary judgment record.  Hahn also summarized certain documents in the summary judgment record involving a fraudulent scheme arising out of the issuance of Hydrocarb stock.[92]  Finally, Hahn created a summary chart depicting the deposits and withdrawals made by and to various entities involved in the alleged schemes.[93]

Watts complains that Hahn is an expert witness and falls under the notice and report requirements of Rule 26(a)(2)(A).  Plaintiff responds that Hahn is not offering any opinion testimony but is merely acting as a summary witness to explain the significance of documents in the record, to summarize deposits and transfers to and from Watts's bank accounts, and to calculate the total amount Watts was paid as a result of the alleged fraud.  Plaintiff points out that Hahn offered no opinions utilizing accounting standards and used basic math to arrive at her calculations.

---

[90]    See id. APP 037-038.

[91]    See id. APP 040.

[92]    See id. APP 040-042.

[93]    See Doc. 65, APP 069, Summary Chart.

The Fifth Circuit "expressly allows summary witnesses to summarize voluminous records in complex cases." United States v. Baker, 923 F.3d 390, 397 (5th Cir. 2019). "[W]hen a chart does not contain complicated calculations requiring the need of an expert for accuracy no special expertise is required in presenting the chart." S.E.C. v. Seghers, 298 F. App'x 319, 326 (5th Cir. 2008)(internal quotation marks omitted)(quoting United States v. Jennings, 724 F.2d 436, 443 (5th Cir. 1984)). In Seghers, the Fifth Circuit allowed charts and testimony from a summary witness who summarized "the total values of [three hedge funds] reported to investors each month with the total values listed in statements of the banks and brokers who held the [hedge funds'] assets. See id. at 324-27.

Hahn's chart and testimony are very similar to the charts and testimony admitted in Seghers. Here, Hahn traced the flow of funds through various entities and created a summary chart of her findings. The math involved in creating the chart consisted of totaling the deposits and withdrawals related to various entities and people involved in the underlying transactions. While Hahn's work was detail-intensive, she is an appropriate summary witness, not an expert. See S.E.C. v. Seghers, 298 F. App'x at 326; see also United States v. Milkiewicz, 470 F.3d 390, 401 (1st Cir. 2006)(finding that summarizing information contained in invoices, checks, and other financial records was not expert testimony).

16

### 2.   Schmalz Affidavit

Watts argues that Plaintiff failed to disclose Schmalz as a witness as required by Rule 26.  Under Rule 26, a party must disclose the name, address, and telephone number of any individual likely to have discoverable information that the disclosing party might use to support its claims.  If a party fails to identify a witness, as required by Rule 26(a), the party may not use that witness to supply evidence unless the failure was substantially justified or harmless.  See Fed R. Civ. P. 37(c)(1).  Plaintiff inadvertently left Schmalz off of its initial disclosures.[94]

Schmalz was allegedly the first person who invested in Watts's fraudulent schemes.[95]  Watts was questioned about Schmalz at Watts's deposition, and Watts admitted to personally meeting with Schmalz.[96] The court finds that the nondisclosure of Schmalz is harmless because Watts was aware that Schmalz was a potential witness in this lawsuit.

For these reasons, Watts's motion to strike is **DENIED.**[97]

### III.   Summary Judgment Standard

---

[94]     See Doc. 89-1, Ex. A to Pl.'s Resp. to Watts's Mot. to Strike, Pl.'s Initial Disclosures.

[95]     See Doc. 89, Pl.'s Resp. to Watts's Mot. to Strike pp. 3-4.

[96]     See Doc. 89-3, Ex. C to Pl.'s Resp. to Watts's Mot. to Strike, Watts Deposition pp.98-99.

[97]     In passing, Watts buried a one-sentence argument to strike Smith's affidavit eight pages into his motion to strike.  Watts argues that Smith should be stricken as a witness because he bases his testimony on Hahn's declaration, which is inadmissible.  Watts's argument fails because Hahn's declaration is admissible.

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 504 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Coastal Agricultural Supply, Inc., 759 F.3d at 504 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  See id. at 505 (quoting Celotex Corp., 477 U.S. at 323).  If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute.  See id.  The court must accept all of the nonmovant's evidence as true and draw all justifiable inferences in her favor.  Coastal Agric. Supply, Inc., 759 F.3d at

505 (quoting <u>Anderson</u>, 477 U.S. at 255).

### IV. Motions for Summary Judgment

Plaintiff moves for summary judgment on its claims against Watts.  In his response and motion for summary judgment, Watts argues that Plaintiff has no evidence of its claims.  Watts also argues that Plaintiff has not pled its fraud allegations with sufficient particularity.

**A.   <u>Section 5</u>**

Subject to certain narrowly construed exemptions, 15 U.S.C. § 77e ("Section 5") "forbids the use of any means of interstate commerce or of the mails to sell or offer to sell securities without having first filed a registration statement with the Securities and Exchange Commission." <u>Sec. & Exch. Comm'n v. Cont'l Tobacco Co. of S.C.</u>, 463 F.2d 137, 155 (5th Cir. 1972)(internal quotation marks omitted)(quoting <u>United States v. Custer Channel Wing Corp.</u>, 376 F.2d 675, 677 (4th Cir. 1967).  A defendant is strictly liable for the offer or sale of unregistered securities in violation of Section 5.  <u>See</u> <u>Swenson v. Engelstad</u>, 626 F.2d 421, 424 (5th Cir. 1980).

Failure to comply with Section 5 may result in civil liability under 15 U.S.C. § 77l ("Section 12"), criminal liability, or injunctive action under 15 U.S.C. § 77t(b) ("Section 20"). <u>Sec. & Exch. Comm'n v. Cont'l Tobacco Co. of S.C.,</u> 463 F.2d 137, 155 (5th Cir. 1972).  To establish a prima facie case under Section 5, a

plaintiff must show: "(1) the sale or offer to sell securities; (2) the absence of a registration statement covering the securities; and (3) the use of the mails or facilities of interstate commerce in connection with the sale or offer." Id. at 424-25 (citing Doran v. Petroleum Management Corp., 545 F.2d 893, 899 (5th Cir. 1977)). Once a prima facie case is shown, the burden shifts to the Defendant to prove that he falls within an exemption. Cont'l Tobacco, 463 F.2d at 156.

Plaintiff alleges that Watts violated Section 5(a) and Section 5(c), and argues that it is entitled to summary judgment on these claims. Watts argues that judgment should be entered in his favor on Plaintiff's Section 5 claims because Plaintiff has no evidence supporting them.

Watts specifically argues that there is either no evidence or a fact issue on whether he offered or sold unregistered securities in interstate commerce. Notably, Watts has not claimed an exemption to Section 5 and is only contesting Plaintiff's prima facie case. Whether Watts offered or sold SMDRE promissory notes hinges on whether he promoted the notes to the investors. See Pinter v. Dahl, 486 U.S. 622, 644 (1988)(finding that a seller includes a person who urges someone to purchase a security).

In support of his argument, Watts offers his own declaration, SMDRE resolutions, and other SMDRE documents.[98]   The SMDRE

---

[98]   See Doc. 91-1, Exs. A & B to Watts's Resp. to Pl.'s Mot. for Summ. J., Watts Decl. & SMDRE Resolutions and Docs.

resolutions and documents range from January 1, 2013, to June 30, 2016, and include the following: (1) a January 1, 2013 resolution stating that SMDRE "shall be managed by one or more Managers" who "may bind [SMDRE] in all matters in the ordinary course of business including the sale of any assets or securities[;]" (2) January 13, 2013 resolutions transferring 51% ownership in SMDRE to Stanley and naming Stanley and Stanley's son as SMDRE managers; (3) Watts's January 14, 2013 resignation from his position as an SMDRE manager; (4) a December 17, 2013 statement by Watts certifying that he was not an officer or director of SMDRE; and (5) documents showing that Stanley, his son, or both were the manager(s) of SMDRE for all periods following Watts's resignation.[99]

Watts stated in his deposition that his involvement in any pre-investment meetings regarding the SMDRE promissory notes was limited to the oil and gas side of the business. In his declaration, Watts stated that he never sold or offered any securities on behalf of SMDRE. Finally, Watts's summary judgment evidence shows, at least on paper, that as of January 14, 2013, he no longer had a controlling interest in SMDRE or was a manager.

Plaintiff responds that Watts's declaration is self-serving and should be disregarded. However, the SMDRE documents and resolutions offer some support for Watts's claim that he was not involved in the sales aspect of the SMDRE promissory note

---

[99]   See Doc. 91-1, Ex. B to Watt's Resp. to Pl.'s Mot. for Summ. J., SMDRE Resolutions and Docs.

transactions.  Further, Watts maintained in his deposition that he did not sell the SMDRE promissory notes.

Contrary to Watts's claims, the declarations of two investors state that Watts was directly involved in the sale of the SMDRE promissory notes and Watts's own testimony shows that he exercised some amount of control over SMDRE even after he resigned as a manager.  These contradicting stories concerning Watts's involvement in the sale of the SMDRE notes create a fact issue whether Watts sold or offered to sell the SMDRE promissory notes. It is necessary that a jury resolve this factual dispute in order to determine whether Watts is liable.

Accordingly, Plaintiff is not entitled to summary judgment on its Section 5 claims.  Additionally, as Plaintiff has provided evidence that the SMDRE notes were sold to out of state investors and were not covered by a registration statement, Plaintiff has supported the other elements of its Section 5 claims.  Thus, Watts is not entitled to summary judgment on these claims.

**B.   Section 10(b)**

Plaintiff moves for summary judgment on its claims under 15 U.S.C. 78j(b) ("Section 10(b)") and 17 C.F.R. 240.10b-5 ("Rule 10b-5") thereunder.  Watts argues that judgment should be entered in his favor on Plaintiff's Section 10(b) claims because Plaintiff has no evidence supporting them.

To prove its Section 10(b) claims, a plaintiff must show that the defendant: "(1) made a misstatement or omission (2) of material fact (3) in connection with the purchase or sale of securities (4) with scienter." S.E.C. v. Gann, 565 F.3d 932, 936 (5th Cir. 2009). In the Fifth Circuit, "the required state of mind for scienter is an intent to deceive, manipulate, or defraud or severe recklessness." Spitzberg v. Houston Am. Energy Corp., 758 F.3d 676, 684 (5th Cir. 2014)(internal quotations and alterations omitted) (citing Lormand v. US Unwired, Inc., 565 F.3d 228, 251 (5th Cir. 2009)).

Plaintiff argues that "[b]ecause of Watts's participation in the offer or sale of SMDRE securities in the form of promissory notes, the [third] element here has been satisfied and cannot be disputed[.]"[100] As discussed above, there is a fact issue regarding Watts's level of involvement in the sale of the SMDRE promissory notes. Thus, Plaintiff has not proven the third element of its Section 10(b) claims as a matter of law and summary judgment in its favor is not appropriate.

Regarding the other elements, Plaintiff presented evidence that Watts did not tell investors about: (1) Stanley's commission; (2) the intent to purchase oil and gas interests from a company he owned; or (3) SMDRE's substantial indebtedness. Watts also allegedly stated that investors' principal was completely safe. The

---

[100]    See Doc. 63, Pl.'s Mot. for Summ. J. p. 18.

23

court finds that this evidence is sufficient to rebut Watts's claim of no evidence as to the other elements of Plaintiffs Section 10(b) claims.

## C.   **Section 17(a)**

Plaintiff argues that it has proven its 15 U.S.C. 77q(a) ("Section 17(a)") claims as a matter of law.  Again, Watts argues that there is no evidence supporting Plaintiff's Section 17(a) claims.

Section 17(a) prohibits three distinct categories of misconduct in the sale of any securities by use of means of interstate commerce or the mails, directly or indirectly.  Section 17(a)(1) prohibits the employment of "any device, scheme, or artifice to defraud."  Section 17(a)(2) prohibits obtaining "money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."  Section 17(a)(3) prohibits engaging "in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

Section 17(a)(1) requires a showing of scienter.  <u>Aaron v. Sec. & Exch. Comm'n</u>, 446 U.S. 680, 696 (1980).  Sections 17(a)(2)-(3) require a showing of negligence.  <u>S.E.C. v. Hopper</u>, CIV.A. H-04--1054, 2006 WL 778640, at *9 (S.D. Tex. Mar. 24, 2006).

As discussed above, the extent to which Watts was involved in

24

the sale of the SMDRE promissory notes is in dispute.  In light of those fact issues, Plaintiff is not entitled to summary judgment on its Section 17(a) claims.

Turning to Watts's motion for summary judgment, Plaintiff has provided evidence that Watts orchestrated a scheme to use investor money obtained from the sale of SMDRE promissory notes to purchase oil and gas interests from Lifestream, a company Watts owned. Watts eventually transferred these same oil and gas interests back to Lifestream where they were sold, and the proceeds pocketed by Watts.  In exchange for transferring these oil and gas interests back to Lifestream, SMDRE took on additional debt with Geoserve, another company owned by Watts, for no apparent legitimate business reason.  This evidence alone is sufficient to rebut Watts's claim that there is no evidence supporting Plaintiffs' Section 17(a)(1) and Section 17(a)(3) claims.

Among other statements and omissions, Plaintiff has provided evidence that Watts did not inform investors that SMDRE would purchase oil and gas interests from a company he owned and that Watts falsely told investors that their principal would be safe in order to entice them to purchase SMDRE promissory notes.  Plaintiff has met its burden to produce evidence on its Section 17(a)(2) claim to rebut Watts's motion for summary judgment.

D.    **Particularity of Fraud Claims**

Finally, Watts argues that Plaintiff has not stated its claims

of fraud with sufficient particularity.   "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.   Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Plaintiff has provided a detailed background of the fraudulent schemes in which Watts was allegedly engaged.   Plaintiff has also provided evidence of multiple instances where Watts made fraudulent statements or omitted material facts in a way that raises a factual issue of an intent to defraud.   Plaintiff has met its Rule 9(b) burden.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and that Watts's motion for summary judgment be **DENIED.**   It is **ORDERED** that Watts's motion to strike is **DENIED** and his objection is **OVERRULED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the

26

United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 26th day of February, 2020.

_____
Nancy K. Johnson
United States Magistrate Judge

27